## STATE *vs.* ALBERT MURRAY.

Sagadahoc.    Opinion December 17, 1891.

*Fish.    Bay.    Inlet.    Indictment.    Evidence.    Stat. 1889, c. 306.*

Any portion of the sea which is bounded on three sides by the land and upon the fourth side by a line not more than three nautical miles in length which touches both opposite shores, is within the letter and spirit of c. 306 of Public Laws of 1889, prohibiting the taking of certain kinds of fish in bays, inlets, &c., where the distance from opposite shores of the same at any point, is not more than three nautical miles in width.

An allegation in an indictment under that statute that the purse or drag seine was " of more than one hundred meshes in depth," directly negatives the suggestion that it might be of less than one hundred meshes in depth.

Evidence that a seine was large enough to take in six hundred or seven hundred barrels of fish at one haul, is sufficient proof that a seine was of more than one hundred meshes.

ON EXCEPTIONS.

This was indictment under c. 306, stat. of 1889, for illegal taking of menhaden.

After verdict against the defendant he moved in arrest of judgment.    The motion was overruled by the court and the defendant excepted thereto and to the instructions of the court to the jury, which are sufficiently stated in the opinion.

*Chas. D. Newell*, County Attorney, for the State.

*Baker, Baker and Cornish*, for defendant.

EMERY, J.    By R. S., c. 40, § 17, as amended by c. 306 of public laws of 1889, the taking of certain kinds of fish — "by the use of purse and drag seines is prohibited in all small bays, inlets, harbors or rivers, where any entrance to the same, or the distance from opposite shores of the same, at any point, is not more than three nautical miles in width."    The defendant was indicted for taking such fish with such seine, "in a small bay extending inland between Isaiah's Head and Little Morse's Mountain, headlands on the main, in said town of Phippsburg, the entrance to which said small bay between said headlands being less than three nautical miles in width."    He was convicted and has brought the case to the law court on exceptions.

One question of law he now presents is, whether the place described in the indictment is a "small bay," &c., within the meaning of the statute. At the place named, is a long reach of shore or beach which curves somewhat inland from Isaiah's Head and Little Morse's Mountain, so that a straight line drawn from the shore at the head to the shore at the mountain, would be about two nautical miles in length and would include a comparatively narrow strip of water between itself and the curving shore. The beach or shore is generally in the shape of an arc of a large circumference. The subtending chord of this arc is not more than three nautical miles in length, but is several times the length of the bisecting radius between chord and circumference. The defendant's act was within this segment of the circle.

Is a body of water of this shape within the meaning of the statute? The defendant urges that such a body of water is not a "bay, harbor, inlet or river,"—that this particular place is not called by either of those names but is locally known as "Small Point Beach,"—that a "bay, inlet, harbor or river," would extend further inland while this body of water is open to the sea and is a part of the sea.

The statute is general. It applies to the entire coast line of the State. Its operation cannot be restricted in any locality by any local geographical names. Its effect upon the sea at Old Orchard is the same, whether the locality be called Old Orchard Beach, or Old Orchard Bay. The statute does not so much name, as describe the bodies of water to be affected, and that description is confined to one item. It says nothing about the length of the distance into the land, of the bay, inlet, harbor or river. The only criterion is the width of the entrance, if there be an entrance, or if not, then the distance from opposite shores at any point. Wherever the shore so bends inland that the line or chord three nautical miles long or less, will touch the opposite shores, there it meets the description in the statute. If the fisherman at any time is so near the land that a straight line not more than three nautical miles long, drawn outside of him, will touch opposite shores he is not in the open sea, but is within the waters described in the statute.

Another question of law presented is, whether the indictment sufficiently negatives the exception in the same section of the statute of nets of not more than one hundred meshes in depth for mackerel or porgies (those being the fish taken). The indictment alleges the taking the porgies "with purse and drag seines of more than one hundred meshes in depth." This allegation clearly and directly excludes the excepted nets.

The presiding justice, though requested by the defendant, declined to instruct the jury that there was no legal evidence in the case, to authorize the jury to find that the defendant's net was in fact, "more than one hundred meshes in depth." If this question can be raised by exceptions, it is readily answered by quoting the defendant's own testimony where he says, he set his seine and in his first haul got between six hundred and seven hundred barrels. A jury can properly infer that a seine of that capacity is of more than one hundred meshes in depth.

The other exceptions were not urged.

*Exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.